IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED

MAR 1 0 2010

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

SHARON WILLIAMS,

        **Plaintiff,**

v.                                            **Civil Action No. 4:09cv84**

CDP, INC., *et al,*

        **Defendants.**

## *MEMORANDUM OPINION AND ORDER*

Before the Court is Defendants CDP, Cellar Door Amphitheater, SFX Entertainment, Clear Channel Communications and Live Nation Worldwide's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). Defendant JJJ Management has also filed a Motion to Adopt the Motion for Judgment on the Pleadings. A hearing on this matter was conducted on February 17, 2010. This matter has been fully briefed and is ripe for judicial determination.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff's deceased husband, David H. Williams, worked for CDP, Inc. ("CDP") as a music promoter. On December 1, 1994, Williams entered into an Employment Agreement with CDP, as well as a Deferred Compensation Agreement. The Deferred Compensation Agreement also provided guarantors Cellar Door Management, Inc. and Cellar Door Amphitheater, Inc. in

1

the event that CDP, Inc was unable to honor its obligations, as well as John Boyle as a guarantor should neither Cellar Door Management nor Cellar Door Amphitheater be able to honor their obligations.

Williams died on January 27, 1999.  Plaintiff alleges that she was paid $100,000 per year through May 2008 pursuant to the Deferred Compensation Agreement, but that she has received no further payments. (Compl. ¶ 20.)

Defendants SFX Entertainment, Clear Channel Entertainment, Live Nation Worldwide, are successors in interest to CDP and Cellar Door Amphitheater.  As of this lawsuit, Defendants CDP, Cellar Door Amphitheater, SFX Entertainment, and Clear Channel Entertainment have been dissolved into or succeeded by Live Nation Worldwide.  Defendant JJJ Management is a successor in interest to Cellar Door Management.

On June 4, 2009, Plaintiff filed a four-count complaint in Williamsburg Circuit Court, alleging breach of contract against all defendants, breach of guaranty against defendants Cellar Door Management, Cellar Door Amphitheater, SFX Entertainment, Clear Channel Communications and Live Nation Worldwide, a third-party beneficiary claim against John J. Boyle individually, and a third-party beneficiary claim against all defendants.  The case was removed to this Court on July 8, 2009.

On November 4, 2009, Defendants CDP, Cellar Door Amphitheater, SFX Entertainment, Clear Channel Communications and Live Nation Worldwide filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  On November 18, Defendant JJJ Management moved to adopt the motion for judgment on the pleadings.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed, but within such time as not to delay trial, a party may move for a judgment on the pleadings." A motion for judgment on the pleadings is appropriate when all material facts are admitted and only questions of law remain. *Republic Insurance Co. v. Culbertson*, 717 F. Supp. 415, 418 (E.D. Va. 1989). A court applies the same standard for a motion for judgment on the pleadings as for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Edwards v. City of Goldboro*, 178 F.3d 231, 243 (4th Cir. 1999). Under this standard, courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## III. DISCUSSION

Plaintiff's first count is based on breach of contract against all defendants, specifically, the breach of the Deferred Compensation Agreement to pay Plaintiff $100,000 per annum for her life. (Compl. ¶ 39-42.) The remaining counts stem from this contract as well, and are dependent on the interpretation of the Deferred Compensation Agreement and the Employment Agreement. Defendants argue that Plaintiff's deceased husband had not satisfied the conditions precedent to receive deferred compensation, and consequently, Defendants owe no duty to Plaintiff as the surviving spouse.

3

In Virginia, contracts must be construed as written, without adding terms that were not included by the parties.[1] *See Ross v. Craw*, 343 S.E.2d 312, 316 (Va. 1986). "Where an agreement is complete on its face and is plain and unambiguous in its terms, the court is not at liberty to search for meaning beyond the instrument itself. This is so because the writing is the repository of the final agreement of the parties." *Pacific Insurance Co. v. American National Fire Insurance Co.*, 148 F.3d 396, 405 (4th Cir. 1998) (quoting *Lerner v. Gudelsky Co.*, 334 S.E.2d 579, 584 (Va. 1985). A contract is not ambiguous merely because the parties dispute the meaning of the language. *See Trex Co. v. ExxonMobil Oil Corp.*, 234 F. Supp. 2d 572, 575 (E.D. Va. 2002). Any ambiguity that justifies resort to extrinsic evidence must be apparent from the face of the contract. *Schneider v. Continental Cas. Co.*, 989 F.2d 728, 731 (4th Cir. 1993).

At issue in this dispute are two paragraphs in the two agreements. Paragraph 3 of the Deferred Compensation Agreement reads:

> Deferred Compensation; Death Benefit; and Payments for Restrictive Covenants. Commencing upon the Employee's retirement from Employer and the termination of his employment under the Employment Agreement and continuing for the remaining Term of this Agreement, the Employee shall be paid an amount per annum equal to the greater of (I) $100,000 or (ii) the sum of (a) 33 percent of Available Cash and (b) the CDA Amount. If, at the time of Employee's death, Employee is survived by, and is still married to, his current spouse (i.e., his spouse as of the date this Agreement is executed), then the Employer shall either (I) pay to such spouse $100,000 per annum for her life or (ii) purchase a commercial annuity that will pay her $100,000 per annum for her life. The amounts payable hereunder shall be prorated for any period less than one year.

(Compl. Exh. A ¶ 3.)

---

[1]All parties agree that Virginia law applies to the interpretation of the contracts.

4

Paragraph 5.3 of the Employment Agreement reads:

> Death. In the event of the death of the Executive during the term of his employment hereunder, the Company shall (I) pay to the estate of the deceased Executive any unpaid Base Salary through the Executive's date of death, (ii) pay to the estate of the deceased Executive the Bonus, if any, not yet paid to the Executive for any year prior to the date of death, at such time as the Bonus would have otherwise have been payable to the Executive, and (iii) pay to the estate of the deceased Executive a portion of the Bonus, if any, for the year in which such death occurs, at such time as the Bonus would otherwise have been payable to the Executive, equal to the product of (x) the quotient obtained by dividing (A) the number of months in the year that the Executive was employed by the Company prior to his death (including the month in which the death occurs if the death occurs on or after the fifteenth of such month), by (B) 12, times (y) the Bonus for the year in which the death occurs, as calculated pursuant to the terms of Section 3.2. The Company shall have no further liability hereunder (other than for reimbursement for reasonable business expenses incurred prior to the date of the Executive's death, subject, however to the provisions of Section 4.1).

(Compl. Exh. B ¶ 5.3.)

Plaintiff's claim arises from Paragraph 3 of the Deferred Compensation agreement, which she claims entitles her to $100,000 per year or a commercial annuity that will pay her $100,000 per year, as the relevant conditions of the paragraph have been satisfied: (1) she was married to decedent as of the date of the Agreement was executed; (2) at the time of decedent's death, she was married to him and survived him. (Compl. Exh. A ¶ 3.)

To interpret the contract in this way, however, requires that the Court ignore the sentence immediately preceding that which the Plaintiff references. In the interpretation of Virginia contracts, "The contract must be read as a whole, and meaning must be given to every clause, if possible, in order for the court to ascertain the unitary agreement of the parties." *State Farm Fire*

& Cas. Co. v. Nationwide Mut. Ins. Co., 596 F. Supp. 2d 940, 945 (E.D. Va. 2009) (citing Quesenberry v. Nichols, 159 S.E.2d 636, 640 (Va. 1968)). The paragraph begins with the clause, "Commencing upon the Employee's retirement from Employer and the termination of his employment under the Employment Agreement and continuing for the remaining Term of this Agreement . . .", and then proceeds to list the benefits that inure. (Compl. Exh. A ¶ 3.) These sentences must be read together to construe the paragraph, and consequently the contract, as a whole. Evaluating the structure of the contracts, each unique term or definition is separated out by paragraph. Should the drafters have wished to give decedent a death benefit independent of whether he had retired, that benefit would warrant its own paragraph. To read the sentences separately strains the interpretation beyond credence.

Furthermore, Paragraph 5.3 specifies what decedent's estate is entitled to should he die during the course of his employment, consisting of his unpaid base salary and a prorated portion of any bonus for that year. At the time of decedent's death, decedent had not retired but was still actively employed with CDP. (Compl. ¶ 16.) There is no dispute that Plaintiff received decedent's salary for the time he worked or the bonus that was due. As a result, as concludes the paragraph, CDP has no further liability. Since the language of this paragraph is plain and unambiguous, the Court must give effect to the plain meaning of that language. *Blue Cross of S.W. Va. & Blue Shield of S.W. Va. V. McDevitt & Street Co.*, 360 S.E.2d 825, 827 (Va. 1987). Under Plaintiff's interpretation, decedent would be subject to two different but inconsistent death benefits. This inconsistency is avoided when the Deferred Compensation death benefit is triggered only upon retirement, as there are two outcomes for the company's liability depending on whether decedent had retired at the time of his death.

In addition, under the Plaintiff's interpretation, Paragraph 4 of the Deferred Compensation Agreement would be rendered moot, as it provides that "In consideration of the payments to be made hereunder during the Term of this Agreement, Employee agrees to perform such advisory and consultative services as may be reasonably requested by Employer. . ." (Compl. Exh. A, ¶ 4.) If the Deferred Compensation Agreement were intended to be in effect in the event of decedent's death during his term of Employment, there could be no consideration as the decedent could not provide advisory and consultative services either before he retired or after he died. In Virginia, each clause of a contract "should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein." *Seals v. Erie Ins. Exchange*, 674 S.E. 2d 860 (Va. 2009). In order to give effect to this clause, decedent must have retired prior to his death to receive the benefits of Deferred Compensation.

The language in these contracts is clear and unambiguous. As decedent did not satisfy the condition precedent to entitle him or his estate to Deferred Compensation, Defendants owe no further duty to Plaintiff. The fact that Defendants paid Plaintiff $100,000 for nine years after her husband's death in no way renders Defendants liable to continue those gratuitous payments. Therefore, Defendants' Motion for Judgment on the Pleadings is **GRANTED**.

## IV. CONCLUSION

For the reasons stated above, Defendants CDP, Cellar Door Amphitheater, SFX Entertainment, Clear Channel Communications, Live Nation Worldwide, and JJJ Management's Motion for Judgment on the Pleadings is **GRANTED**.[2]

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and parties of record.

**IT IS SO ORDERED.**


                                                    /s/
                                        ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                                        Raymond A. Jackson
                                        United States District Judge

Norfolk, Virginia
March ⁄Ⅼ , 2010

_____

[2]John Boyle remains a Defendant because the Court has not received a dispositive motion from Defendant John Boyle.  In as much as JJJ Management filed a motion to adopt the Motion for Judgment on the Pleadings, JJJ Management's Motion to Adopt is Granted.